Drake, Ch. J.,
delivered the opinion of the court:
The claimant is a paymaster in the United States Army, and files his petition' under the Act May 9,1866, 11 To extend the jurisdiction of the Court of Claims,” (14 Stat. L., p. 44.) praying the decree of this court for relief from responsibility for $3,141.39 of moneys of the Government which were to be disbursed by him, and were embezzled by his clerk, by means of altered vouchers and checks.
The defendants demur to the petition, as insufficient in law to sustain the action.
The act in question is in the following words:
“ Sec. 1. That the Court of Claims shall have jurisdiction to hear and determine the claim of any paymaster, quartermaster, commissary of subsistence, or other disbursing officer of the United States, or of his administrators or executors, for relief from responsibility on account of losses, by capture or otherwise, while in the line of his duty, of Government funds, vouchers, records, and papers in his charge, and for which such officer was and is held responsible: Provided, That an appeal may be taken to the Supreme Court, as in other cases.
“ Sec. 2. That whenever said court shall have ascertained the facts of any such loss to have been without fault or neglect on the part of any such officer, it shall -make .a decree, setting forth the amount thereof, upon which the proper accounting. officers of the Treasury shall allow to such officer the amount so decreed as a credit in the settlement of his accounts.”
The substantial averments of the petition are, that the claimant, as paymaster, on duty in the State of Mississippi, in the years 1868 and 1869,-was required to pay what were known as *272 “reconstruction accounts,” the funds for which were kept separate from those furnished for the payment of the officers and soldiers of the Begular Army; that one James Thomas, holding the office of paymaster’s clerk under him, was made by claimant chief clerk in the payment of said “reconstruction .accounts; ” that said Thomas, while acting as such chief clerk, and having in charge the preparation of the vouchers on which said “reconstruction accounts” were paid by the claimant, at various times, without the knowledge of the claimant, fraudulently and feloniously altered a large number of vouchers against the United States, which had been approved and ordered to be paid by the proper military authorities, so as largely to increase the amount of money due on said vouchers, and altered and raised certain checks, signed by the claimant, for the payment of said vouchers, by means of which he wrongfully and fraudulently obtained the money on said vouchers and checks, whereby he received and embezzled of the money of the United States the sum of $3,409.62 before his wrongful and criminal acts were detected; that the said embezzlement occurred without any fault on the part of the claimant; that the said Thomas was tried and convicted of the crime aforesaid by a court-martial, and sentenced to fine and imprisonment therefor; that, in consequence of said embezzlement, there was, upon the settlement of claimant’s accounts by the proper officers of the Government, found to be a deficiency of $3,141.39, which was charged to claimant as a balance due by him to the United States; whereupon, and until he paid that balance into the Treasury, he was suspended by the proper officers from duty, and his pay and allowances, as paymaster were stopped, and he was liable to be court-martialed and dismissed the service of the United States; that under the pressure of these orders and circumstances he did, in January, 1872, pay to the United States the said sum of $3,141.39, when in justice and right he ought not to have been required to pay the same; and he prays for a decree in his favor, as authorized by said act.
. The question is whether the claimant’s case, as stated in his petition, is one which entitles him to the relief provided for in the act.
The fundamental ideas of the act are: 1. That the “funds, vouchers, records, and papers,” on account of the loss of which *273 the officer seeks relief, should have been “in his charge,” that is, in his possession and under his control; 2. That they should have been taken out of his possession and control “ by capture or otherwise;” 3. That such taking should amount toa loss of them; 4. That such loss should have occurred “ without fault or neglect on the part of such officer; ” and, 5. That the officer should have been, and should still he, held responsible for such “funds, vouchers, records, and papers.”
The petition of the claimant fails to disclose a case for relief under the act.
In the first place, it does not allege that the money embezzled by the clerk was in the claimant’s possession or charge.
The averment is that “he was required to pay what was known as ‘reconstruction accounts,’ the funds for which were kept separate from those furnished for the payment of the officers and soldiers of the Regular Army.” This does not imply that the funds with which those accounts were intended to be paid were in his possession or under his charge. The presumption that they were is neutralized, if not rebutted, by the fact that' the clerk effected the embezzlement by altering and raising the sums for which the claimant’s own checks . were drawn to pay allowed vouchers. It is not presumable that the claimant drew checks for that purpose on himself. If he did, then it was gross fault on his part, which enabled the ■clerk to defraud him -by means of such checks. In the absence of any averment on this point, the presumption is that the checks were drawn upon some other person or some banking establishment holding the funds subject to his checks. This presumption is supported by his allegation that, those funds “ were kept separate from those furnished for the payment of the officers and soldiers of the Regular Army.” The conclusion, then, is, that those funds were not in his possession or charge; and if not, then lié did not lose them by capture or otherwise; it was simply a case of more being drawn from the depositary, through forged checks and vouchers, than should have been, > resulting in the claimant’s being charged with the excess over the amount justly payable. This was an eventual loss to him in the settlement of his accounts, but not such a loss as the Government, by the act in question, authorizes this court to relieve him from.
This conclusion is aided by the words of the act, coupling *274 “ funds ” with “ vouchers, records, and papers f which latter-would necessarily be in his possession. The kind of loss contemplated by the act was doubtless the same as to all those enumerated articles. Each might be lost by capture, by robbery or theft, by fire or flood, or by unavoidable accident; and it seems to us that it was against such kinds of loss of specific things, for which he could have no other remedy, that the act was intended to afford relief; not against losses suffered by the officer-throu gh forgeries committed by his employés or others, for which he would in law be entitled to recourse against both the forger and the depositary who paid the forged checks.
But there is another view, which seems to us to leave the claimant without a title to relief. As before stated, an officer, to be entitled to that relief, must not only have been, but must still be, held responsible to the Government for that which he-lost. The effect of a decree under this act is to release him from a present and existing responsibility. If his responsibility has been discharged, he is no longer entitled to relief. Here the claimant alleges that he has paid into the Treasury the Avhole balance charged against him by the Government, He-is, therefore, no longer held responsible therefor. His account, as to this matter, has by his own act been settled and closed, and there is, therefore, no unsettled account in which a credit decreed by this court could be allowed.
This brings usto the real point of this case. Though the petition sets forth a claim for relief under this act, the suit is in reality not to obtain by decree a credit in the settlement of his accounts, but to recover back the amount paid by him into the Treasury, which he avers “ in justice and right he ought not'to have been required to pay.” And, in support of this position, he claims that the payment into the Treasury was made by him “ under the pressure of three things, namely: 1. His suspension from the exercise of his official functions ; 2. The stoppage of his pay and allowances; and, 3. His liability to be court-mar-tialed and dismissed the service. This was by his counsel íd the argument termed “ moral duress,” a species of duress not known to the law. It is not, nor could it be, alleged that the-stoppage of his pay and allowance was illegal, for it was done in pursuance of positive law. By the Act January 25, 1828, “ To prevent defalcation on the part of the disbursing agents: *275 of the Government, tmcl for other purposes,” (4 Stat. L., p. 246,) it is provided “ that no money hereafter appropriated shall be paid to any person, for his compensation, who is in arrears to the United States, until such person shall have accounted for and paid into the Treasury all sums for which he may be liable.” And section 1350 of the Army Regulations of 1863 provides as follows : “ No person.in the military service, while in arrears to the United States, shall draw pay. When the Secretary of War shall find, by report of the Comptroller of the Treasury or otherwise, that an officer of the Army is in arrears to the United States, the Paymaster-General shall be directed to stop his pay to the amount of such arrears, by giving notice thereof to the paymasters of the Army and to the officer who may pay over the amount to any paymaster. And no paymaster shall make to him any payment on account of pay until he exhibits evidence of having refunded the amount of the arrears, or that his pay accrued and stopped is equal to it, or until the stoppage is removed by the Paymaster-General.”
Hence it follows that the stoppage of the claimant’s pay and allowances was not only no duress in morals or in law, but was expressly required by law.
The averment in regard to his suspension from the exercise of his official functions is' not that the suspension was unlawful. But if it was unlawful, that would not entitle the claimant to the relief sought. Still the fact would remain that the accounting officers of the Government, charged by law with the settlement of his accounts, found a balance against him, which he was bound to pay, or, before paying it, to seek here the relief which he invokes. The application is too late after he has made the payment, and thereby settled and closed the account.
Much less would an illegal suspension from the exercise of his official functions authorize him to recover back the amount paid by him into the Treasury. There is no averment that the payment was made under protest, and for aught that appears it was wholly voluntary.
On no ground does it appear to us that the petition presents a case for relief, and the demurrer must therefore be sustained.
Nott, J., did not sit in this case, and took no part in the decision.